NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KIMBERLE SPENCER, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

LIFETOUCH NATIONAL SCHOOL, *Respondent Employer*,

NEW HAMPSHIRE INSURANCE COMPANY C/O CCMSI,
*Respondent Carrier.*

No. 1 CA-IC 14-0085
FILED 1-14-2016

Petition for Special Action from the Industrial Commission
ICA Claim No. 20122-910033
Carrier Claim No. 12D28C327130
The Honorable Joseph L. Moore, Administrative Law Judge

**AFFIRMED**

COUNSEL

Kimberle Spencer, Mesa
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent ICA*

Jardin, Baker, Hickman & Houston, P.L.L.C.
By K. Casey Kurth
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge Samuel A. Thumma joined.

---

**S W A N N**, Judge:

¶1        Kimberle Spencer appeals by special action an Industrial Commission of Arizona ("ICA") decision that her industrial injury had become medically stationary and was non-permanent and that she was no longer entitled to benefits.  At issue is whether the Administrative Law Judge ("ALJ") properly resolved the conflict in medical opinions in favor of the Independent Medical Examination ("IME") doctors.  The ALJ considered evidence from all parties' experts and concluded that the IME opinions were better-founded based on the testimony and evidence in the record.  We therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Spencer worked as a production specialist and photographer for Lifetouch National School ("Lifetouch").  She had a personal medical history of back and spine injuries and surgeries.  On October 9, 2012, she slipped on nylon bags lying on the floor under her desk, twisting her back to keep herself from falling.  She did not initially experience much pain but by the next day reported severe pain in her lower back, left hip and left knee.  On October 11, the initial examination concluded that she had lower back pain and muscle spasms.  The examining doctor prescribed anti-inflammatory drugs, gave her work restrictions and recommended icing her back.  In November, Spencer underwent an IME.  The examining doctor determined that, though she had a pre-existing back condition, her current symptoms were likely related to her accident; he recommended "aggressive physical therapy" to treat her.  The ICA awarded temporary benefits effective October 11, 2012.

¶3        An adjuster recommended her personal physician, Dr. Christopher Huston, for follow-up care, and he referred Spencer for several weeks of physical therapy.  During physical therapy in February 2013,

2

Spencer experienced a sharp pain in her neck, which sent her to urgent care and eventually the emergency room. She was diagnosed with neck strain, but a CT scan and an MRI both showed no abnormal results. Dr. Huston then gave Spencer trigger-point injections, which she reported made her feel "[t]en times worse." Dr. Huston believed that her poor response to the trigger-point injections indicated her current pain was unrelated to her industrial accident and released her from care in April 2013.

¶4          In April, Spencer underwent IMEs with Dr. John Beghin, Dr. Leo Khan, and Dr. Carol Peairs to determine if she needed to continue medical care for her October 2012 industrial injury. Drs. Beghin and Khan were of the opinion that Spencer had reached maximum medical improvement for her industrial injury and any ongoing symptoms were the result of her history of fibromyalgia, anxiety and depression; Dr. Peairs agreed that Spencer had reached maximum improvement, and similarly noted her history of fibromyalgia. The doctors did not recommend any ongoing treatment. The ICA notified Spencer that her temporary compensation and active medical treatment terminated as of April 30, 2013. Spencer requested a hearing on the termination, asserting that her injury was not stationary or that if it was stationary, it resulted in permanent disability.

¶5          In May 2013, Spencer moved to Ohio to help care for her mother. Because she was still experiencing neck, back and knee pain, she visited Dr. Philip Minella, a board-certified neurosurgeon, who had performed her previous back and spine surgeries. He recommended surgery for her neck condition, which he then performed in August 2013. Spencer believed that this surgery was a necessary part of treatment for her injury and should have been covered. At her November 2013 hearing on benefits termination, she testified that, contrary to the IME opinion, she did not believe that fibromyalgia caused her pain; her symptoms were the result of the injury. The ALJ scheduled additional hearings for June 2014 to allow testimony from Dr. Minella and Dr. Beghin.

¶6          Dr. Minella testified that he was not in a position to know whether Spencer's condition had become stationary after he last saw her in late September 2013. But it was his opinion within a reasonable degree of medical probability that "as best I can tell, the combination of the work-related injury and the injury while she was receiving therapy was the cause for her symptoms and the subsequent treatment that she received." Dr. Beghin, a board-certified orthopedic surgeon specializing in spinal surgery, testified based on the report he authored with Dr. Khan and the report authored by Dr. Peairs, both from April 2013, that Spencer's pain symptoms

were functional and non-organic, consistent with fibromyalgia, anxiety and depression, not the industrial injury. His opinion was that the injury was medically stationary and not a permanent disability and that she would not benefit from any further treatment.

¶7        The ALJ resolved the conflicts in opinion between Dr. Minella and Drs. Beghin, Khan and Peairs in favor of Drs. Beghin, Khan and Peairs, as he believed their opinions were "more well-founded and more probably correct" than Dr. Minella's opinion. The ALJ consequently ruled that Spencer's industrial injury became medically stationary and was not a permanent disability as of April 30, 2013, and he awarded her temporary compensation and medical benefits from October 9, 2012 to April 30, 2013. Spencer requested review of the decision, but the ALJ affirmed the award decision. Spencer now seeks review.

## DISCUSSION

¶8        We defer to the ALJ's findings of fact, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We must affirm if the decision "is reasonably supported by the evidence after viewing the evidence in a light most favorable to sustaining the award." *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶9        The petitioner bears the burden of proving that either her condition is not stationary or she is permanently disabled as a result of her industrial accident. *Lawler v. Indus. Comm'n*, 24 Ariz. App. 282, 284 (1975). Back and spine injuries usually require expert medical testimony to show the cause and extent of impairment, including whether the injury is stationary or permanent. *Gutierrez v. Indus. Comm'n*, 226 Ariz. 1, 3, ¶ 5 (App. 2010); *see also W. Bonded Prods. v. Indus. Comm'n*, 132 Ariz. 526, 528 (App. 1982) ("While there may be . . . injuries that are readily apparent to a layman, typical conditions of the back and spine clearly are not.").

¶10        In case of conflicting expert testimony, the ALJ resolves the conflict. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975); *Walters v. Indus. Comm'n*, 134 Ariz. 597, 599 (App. 1982) ("[T]he trier of fact, with live bodies before it, is in the most advantageous position to weigh the evidence, judge credibility, and evaluate the nuances of witness demeanor that adds up to a conviction that one witness' testimony is entitled to more weight than another."). To resolve conflicting evidence, the ALJ may consider the background and experience of the witnesses, *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988), as well as biases which might affect their credibility, *see Walters*, 134 Ariz. at 599.

**¶11** Dr. Minella testified that it was his opinion, to a reasonable degree of medical probability, that the industrial injury and the resulting physical therapy injury were the cause of Spencer's ongoing symptoms. Dr. Minella relied on his own examination and, in part, Spencer's report of the accident in forming his opinion. Though he later stated his opinion more emphatically, he initially hedged on the connection between Spencer's accident and her symptoms by prefacing his opinion with "as best I can tell." He further testified that he was not able to give an opinion on whether her condition had become medically stationary.

**¶12** In contrast, Dr. Beghin testified that, to a reasonable degree of medical certainty, Spencer's injury was stationary and without permanent impairment as of April 2013. His testimony was based on his review of Spencer's entire file, his own examination, his report with Dr. Khan, and Dr. Peairs's report.

**¶13** The ALJ resolved the conflict of opinions, and concluded on the basis of their testimony and the record that Spencer's injuries were causally related to her industrial injury, but those injuries had become medically stationary as of April 30, 2013 and did not cause permanent impairment. This conclusion was reasonable based on the evidence in the record. Accordingly, Spencer has not shown the ALJ erred.

## CONCLUSION

**¶14** For the foregoing reasons, the award is affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama